# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY E. LAUDENSLAGER, | No. 4:17-CV-00330 |
| Plaintiff, | (Judge Brann) |
| v. | |
| JEFF SESSIONS and THOMAS E. BRANDON, | |
| Defendants. | |

## MEMORANDUM OPINION

### FEBRUARY 13, 2019

Defendants Jeff Sessions and Thomas E. Brandon (hereinafter, "the Government") move for summary judgment on Plaintiff Terry E. Laudenslager's complaint. For the following reasons, the Government's motion will be granted.

## I. BACKGROUND

In 1976, the Court of Common Pleas of Lycoming County, Pennsylvania, convicted Mr. Laudenslager of three counts of receiving stolen property, in violation of 18 Pa. Cons. Stat. § 3925, and one related count of conspiracy, in violation of 18 Pa. Cons. Stat. § 903.[1] Mr. Laudenslager claims that the value of the stolen property

---

[1] Defendants' Statement of Facts (ECF No. 23) at ¶ 1-2, 5; Plaintiff's Statement of Facts (ECF No. 27) at ¶ 1-2, 5; Criminal Complaint (ECF No. 16-2); Order (ECF No. 16-3).

was $650, while the Government avers that its value totaled $1,280.² At the time, the knowing receipt of stolen property valued between $200 and $2,000 constituted a misdemeanor punishable by up to five years of imprisonment.³ The court sentenced Mr. Laudenslager to three years' probation and a $300 assessment.⁴

Because Mr. Laudenslager's state conviction was punishable by up to five years imprisonment, Mr. Laudenslager explains that he was disarmed pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 92l(a)(20)(B), statutes that criminalize firearm possession by state misdemeanants who have committed crimes punishable by more than two years' imprisonment.⁵ He sold his firearms to a licensed dealer and his license to carry a handgun was revoked.⁶

Mr. Laudenslager commenced the present action seeking declaratory and injunctive relief to restore his firearm possession rights. In Count I, he asks this Court to declare that as a matter of statutory interpretation, his predicate state conviction does not fall within the firearm ban set forth in § 922(g)(1) and

---

² Defendants' Statement of Facts (ECF No. 23) at ¶ 3; Plaintiff's Statement of Facts (ECF No. 27) at ¶ 3.

³ Defendants' Statement of Facts (ECF No. 23) at ¶ 6; Plaintiff's Statement of Facts (ECF No. 27) at ¶ 6.

⁴ Defendants' Statement of Facts (ECF No. 23) at ¶ 7; Plaintiff's Statement of Facts (ECF No. 27) at ¶ 7; Order (ECF No. 16-4).

⁵ Complaint (ECF No. 1) at ¶ 12.

⁶ *Id.* at ¶ 12.

§ 92l(a)(20)(B).[7]  Alternatively in Count II, he argues that those statutes are unconstitutional as applied to him.[8] The Government moved for summary judgment, and the matter is ripe for review and disposition.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[10] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[11] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[12]

---

[7] *Id.* at ¶ 25-27.

[8] *Id.* at ¶ 28-30.

[9] Federal Rule of Civil Procedure 56(a).

[10] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[11] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B. Section 922(g)(1) and 921(a)(20)(B) Bar Mr. Laudenslager From Possessing Firearms.

The Second Amendment of the Constitution of the United States safeguards the right of law-abiding citizens to bear arms.[13] The Supreme Court in *District of Columbia v. Heller* explained, however, that the right is not unlimited and may be withheld from certain individuals, including those who commit serious crimes.[14] Accordingly, § 922(g)(1) forbids firearm possession by "any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."[15] Section 921(a)(20)(B) provides an exception, explaining that the phrase "crime punishable by imprisonment for a term exceeding one year" does not cover state misdemeanors "punishable by a term of imprisonment of two years or less."[16]

Mr. Laudenslager argues that as a matter of statutory interpretation, § 922(g)(1) and the exception in § 921(a)(20)(B) do not bar him from possessing firearms because his predicate conviction did not include any prison term.[17] Under

---

[13] U.S. CONST. amend. II.

[14] *See District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) (explaining that although the Supreme Court held unconstitutional the District of Columbia's ban on handgun possession, "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by *felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.").

[15] 18 U.S.C. § 922 (g)(1).

[16] 18 U.S.C. § 921(a)(20)(B).

[17] Complaint (ECF No. 1) at ¶ 26.

his reading of § 922(g)(1) and the exception in § 921(a)(20)(B), "punishable by" means "capable of being punished."[18] According to Mr. Laudenslager, because his offense rendered him "'capable of being punished' by a sentence of two years or less," his predicate offense comes within the § 921(a)(20)(B)'s exception.[19] He also raises arguments under the constitutional avoidance doctrine and the rule of lenity.[20]

Mr. Laudenslager's claim fails because the United States Court of Appeals for the Third Circuit in *Binderup v. Attorney General*[21] has already rejected his proposed construction of § 922(g)(1) and the exception in § 921(a)(20)(B). In *Binderup*, the Third Circuit explained what the phrase "punishable by" means in this context:

> The exception in § 921(a)(20)(B) covers any crime that *cannot* be punished by more than two years' imprisonment. It does not cover any crime that *can* be punished by more than two years in prison. In other words, § 921(a)(20)(B)'s use of "punishable by" means "subject to a maximum penalty of."[22]

The Third Circuit also explained that the constitutional avoidance doctrine and the rule of lenity do not apply because the statute is unambiguous.[23]

---

[18] Plaintiff's Brief in Opposition (ECF No. 28) at 9-10, 12-13; Complaint (ECF No. 1) at ¶ 25-27.

[19] Plaintiff's Brief in Opposition (ECF No. 28) at 9.

[20] *Id.* at 7-8, 13-14.

[21] 835 F.3d 336 (3d Cir. 2016).

[22] *Id.* at 341-43.

[23] *Id.* at 342.

In sum, Mr. Laudenslager's misdemeanor convictions were punishable by—that is, subject to a maximum penalty of—more than two years' imprisonment.[24] Accordingly, he cannot seek refuge in § 921(a)(20)(B) and is subject to the bar of § 922(g)(1). Summary judgment in favor of the Government is granted on Count I.

### C. Mr. Laudenslager's As-Applied Challenge Fails.

Mr. Laudenslager next argues that § 922(g)(1) is unconstitutional as applied to him.[25]

As-applied Second Amendment challenges to § 922(g)(1) brought by state-law misdemeanants are governed by a two-part framework initially established by the Third Circuit in *United States v. Marzzarella*[26] and later adopted in *Binderup*.[27] In his brief opposing summary judgment, Mr. Laudenslager addressed neither

---

[24] *See* 18 Pa. Cons. Stat. Ann. § 3903 (explaining that, unless certain exceptions apply, theft valued between $200 and $2000 constitutes a first-degree misdemeanor); 18 Pa. Cons. Stat. Ann. § 1104 ("A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than…Five years in the case of a misdemeanor of the first degree.").

[25] Complaint (ECF No. 1) at ¶ 28-30.

[26] 614 F.3d 85 (3d Cir. 2010).

[27] The *Binderup* court considered en banc the proper framework used to analyze as-applied Second Amendment challenges. Fifteen judges took part in the ruling, and the matter garnered three separate opinions authored by Judges Ambro, Fuentes, and Hardiman. No single opinion garnered a precedential majority. Nevertheless, the two-step framework first announced in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) did garner majority approval in *Binderup*. Accordingly, I apply *Marzarella*'s two-step framework to the matter at hand, as constitutes the law of this circuit. *See also Keyes v. Sessions*, 282 F.Supp.3d 858, 869 (M.D.Pa. 2017) (applying two-step *Marzzarella* framework to as-applied Second Amendment challenge); *United States v. Brooks*, 282 F.Supp.3d 858, 572 (W.D.Pa. 2018) (same); *Tripodi v. Sessions*, 339 F.Supp.3d 458, 463 (E.D.Pa. 2018) (same).

*Binderup* nor *Marzzarella*, and declined to otherwise make any cognizable argument supporting his as-applied challenge.[28] The Court gave Mr. Laudenslager a second chance, ordering him to utilize the *Binderup-Marzzarella* framework and show cause as to why summary judgment should not be granted to the Government.[29] Although substantive argument in Mr. Laudenslager's second brief only amounts to a few lines—that "[Mr.] Laudenslager has distinguished his circumstances from those of persons historically excluded from the right to bear arms. Specifically, a non-violent misdemeanor offense in which he received probation as a sentence. [sic]"—the Court will nevertheless construe his claim according to the *Binderup-Marzzarella* framework, both in the spirit of Federal Rule of Civil Procedure 56 in which non-movants at summary judgment enjoy inferences drawn in their favor,[30] and also to avoid a miscarriage of justice by disposing of his constitutional challenge solely because of his papers' inadequacy.[31]

---

[28] Brief in Opposition (ECF No. 28).

[29] Order (ECF No. 32).

[30] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) (explaining that all reasonable inferences are drawn in the non-moving party's favor at summary judgment).

[31] *cf. Barna v. Board of School Directors of Panther Valley School District*, 877 F.3d 136, 147-48 (3d Cir. 2017) (explaining that appellate court will only reach a forfeited issue in civil cases in "extraordinary circumstances," such as "when the public interest requires that the issue[s] be heard or when a manifest injustice would result from the failure to consider the new issue[s].") (internal quotation marks and citations omitted).

The *Binderup-Marzzarella* two-step framework proceeds as follows. Under *Binderup-Marzzarella*'s first step, Mr. Laudenslager must show that his predicate offense triggering disarmament was not a serious crime.[32] If Mr. Laudenslager meets his burden at step one, the burden shifts to the Government at step two to demonstrate that § 922(g)(1) satisfies intermediate scrutiny.[33]

At step one, to determine whether Mr. Laudenslager committed a serious crime, the court looks to a number of factors. While the *Binderup* court stated that "there are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights," it considered the predicate offense's maximum punishment[34] and the following four factors: "(1) whether a state classifies the

---

[32] The *Binderup* court distilled this rule after explaining that at step one, a challenger "must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." *Binderup*, 836 F.3d at 347. In *Binderup*, the court explained that the traditional justification for disarming felons was that individuals who commit serious crimes are "unvirtuous," and consequently, unvirtuous individuals "forfeit the right to possess firearms." *Id.* at 348-50; *Id.* at 348 (""[t]he category of 'unvirtuous citizens' is thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent."). Accordingly, Mr. Laudenslager must distinguish himself from this class not by demonstrating that he will not recidivate, but by showing that he is not unvirtuous—that is, that he never lost his Second Amendment rights because he did not commit a serious crime to begin with. *Id.* at 348-50. *See also Keyes v. Sessions*, 282 F.Supp.3d 858, 871 (M.D.Pa. 2017) (explaining what individual raising as-applied challenge must argue to distinguish himself from class of persons historically disarmed).

[33] *Binderup*, 836 F.3d at 353. To satisfy intermediate scrutiny, the Government must demonstrate a "substantial fit between the continuing disarmament of [Plaintiff] and an important government interest." *Id.* at 356.

[34] *Id.* at 350–51 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008) ("[T]o determine whether [a plaintiff is] shorn of [his] Second Amendment

offense as a misdemeanor or felony; (2) whether an offense involves violent criminal conduct, *i.e.*, that violence (actual or attempted) is an element of the offense; (3) the severity of the sentence imposed on the challenger; and (4) whether there is cross-jurisdictional consensus regarding the seriousness of the disqualifying crime."[35] The *Binderup* court explained that evidence of rehabilitation or the likelihood of recidivism is irrelevant to the step one analysis.[36]

The first factor (whether Pennsylvania classifies Mr. Laudenslager's predicate offense as a misdemeanor or felony) supports a finding that Mr. Laudenslager's disqualifying conviction is not a serious crime; but with an asterix. Mr. Laudenslager was convicted of three counts of receiving stolen property in violation of 18 Pa. Cons. Stat. § 3925 and Pennsylvania classifies that crime as a misdemeanor of the first degree.[37] Thus, under *Binderup*, the misdemeanor label attached to Mr.

---

rights, *Heller* requires us to consider the maximum possible punishment but not to defer blindly to it.").

[35] *Zedonis v. Lynch*, 233 F.Supp.3d 417, 427 (M.D.Pa. 2017) (citing *Binderup*, 836 F.3d at 351-52).

[36] *Binderup*, 836 F.3d at 356.

[37] *See* Criminal Complaint (ECF No. 16-2); Order, Lycoming County Court of Common Pleas (ECF No. 16-3); 18 Pa. Cons. Stat. Ann. § 3903 (explaining that, unless certain exceptions apply, theft valued between $200 and $2000 constitutes a first-degree misdemeanor); 18 Pa. Cons. Stat. Ann. § 1104 ("A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than…Five years in the case of a misdemeanor of the first degree."). Mr. Laudenslager was also convicted of one count of criminal conspiracy in violation of 18 Pa.C.S.A. § 903. *See* 18 Pa. Cons. Stat. Ann. § 905(a) ("…attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy).

Laudenslager's predicate offense "is a powerful expression of [the Pennsylvania legislature's] belief that the offense is not serious enough to be disqualifying."[38] But I am cautioned as to not exclusively deduce non-severity from the misdemeanor label alone when the Pennsylvania legislature denoted the crime as the most serious of misdemeanors, one of "the first degree," punishable by a substantial maximum prison term of up to five years.[39] In other words, juxtaposing the Pennsylvania legislature's use of the misdemeanor label with the legislature's simultaneous imposition of a substantial imprisonment term creates an inherent contradiction: a five-year maximum prison term suggests that Mr. Laudenslager's predicate offense is serious, while the misdemeanor label simultaneously undercuts the apparent severity by labeling the offense a non-serious. And our Supreme Court has cautioned on overly relying on the misdemeanor label when deducing severity by noting that at common law, very serious crimes such as kidnapping were categorized at misdemeanors.[40]

Turning to the second factor (whether Mr. Laudenslager's predicate offense involves violent criminal conduct) and third factor (the severity of the sentence

---

[38] *Binderup*, 836 F.3d at 351.

[39] *Id*. at 352 ("[T]he maximum possible punishment is certainly probative of a misdemeanor's seriousness.").

[40] *See Johnson v. United States*, 559 U.S. 133, 149-50 (2010) (Alito, J., dissenting) ("At common law ... many very serious crimes, such as kidnaping and assault with the intent to murder or rape, were categorized as misdemeanors.").

imposed), both support a finding that Mr. Laudenslager's disqualifying conviction is not a serious crime. Mr. Laudenslager's offense does not involve violent criminal conduct because "use or attempted use of force" is not an element of receiving stolen property, and Mr. Laudenslager was given a minor suspended sentence: three years' probation and a $300 assessment.[41]

The fourth factor (whether there is cross-jurisdictional consensus regarding the seriousness of the disqualifying crime) cuts against Mr. Laudenslager, suggesting that his predicate offense is serious. In evaluating cross-jurisdictional consensus, "courts should consider not only if there is consensus as to *whether* States punish the particular disqualifying offense, but also as to *how severely* States punish the offense—*i.e.*, whether States punish it so severely as for it to be disqualifying under § 922(g)(1)."[42]

Here, there is clear cross-jurisdictional consensus as to whether states punish Mr. Laudenslager's disqualifying offense.[43] All 50 states plus the District of Columbia criminalize the knowing receipt of stolen property valued at $1,280.[44]

---

[41] Order, Lycoming County Court of Common Pleas (ECF No. 16-4). *See also Binderup*, 836 F.3d at 352 (calling challenger's sentence minor when he was sentenced to three years' probation and a $300 fine plus court costs and restitution).

[42] *Zedonis v. Lynch*, 233 F.Supp.3d 417, 431 (M.D.Pa. 2017), *accord Binderup*, 836 F.3d at 352-53 (examining consensus for criminality and severity of punishment).

[43] *cf. Binderup*, 836 F.3d at 352 (explaining that no cross jurisdictional consensus existed regarding the seriousness of the challenger's crimes in part because some states criminalized the predicate offense, the vast majority did not).

[44] Government's Brief in Support, Appendix (ECF No. 21-1); DC ST § 22-3232.

The Government also explains that consensus exists as to how severely jurisdictions punish Mr. Laudenslager's predicate offense.[45] Among 51 jurisdictions, 38—or three-quarters—prescribe a maximum sentence that "meet[s] the threshold of a traditional felony (more than one year in prison)."[46] In those 38 jurisdictions (which includes Pennsylvania), an individual would be subject to the bar of § 922(g)(1) and could not seek refuge in § 921(a)(20)(B). That is, 38 jurisdictions (including Pennsylvania), either classify Mr. Laudenslager's predicate offense as a felony punishable by imprisonment for a term exceeding one year, or classify the offense as a misdemeanor punishable by a term of imprisonment exceeding two years.[47] Only 13 states classify the knowing receipt of stolen property as a misdemeanor punishable by a term of imprisonment of two years or less.[48]

Further, when examining how jurisdictions classify Mr. Laudenslager's predicate offense through the misdemeanor-felony label, jurisdictions more frequently classify his offense as a felony rather than as a misdemeanor. Of the 36 jurisdictions who use misdemeanor-felony labels, 24 states—or 66%—label the

---

[45] Government's Brief in Support, Appendix (ECF No. 21-1); DC ST § 22-3232.

[46] *cf. Binderup*, 836 F.3d at 352 (explaining that no cross jurisdictional consensus existed regarding the seriousness of the challenger's crimes in part because "more than half prescribe a maximum sentence that does not meet the threshold of a traditional felony (more than one year in prison)").

[47] Government's Brief in Support, Appendix (ECF No. 21-1); DC ST § 22-3232.

[48] *Id.*

knowing receipt of stolen property worth $1,280 as a felony.[49] Even though 15 jurisdictions do not appear to apply such a misdemeanor-felony label, 12 of those 15—or 80%—seem to ascribe a level of seriousness to Mr. Laudenslager's offense by imposing a substantial length of imprisonment of up to five years' imprisonment or more.[50]

This cross-jurisdictional analysis brings back into view the Pennsylvania legislature's decision to categorize Mr. Laudenslager's predicate offense as a mere misdemeanor. Only two states—Pennsylvania and Florida—suggest that the knowing receipt of stolen property valued at $1,280 is a serious crime because it is punishable by up to five years imprisonment, while simultaneously undermining the offense's severity by labeling it a misdemeanor. This contradiction contextualizes the Pennsylvania legislature's categorization of Mr. Laudenslager's predicate offense as a misdemeanor because to the extent the misdemeanor label "is a powerful expression of [the Pennsylvania legislature's] belief that the offense is not serious enough to be disqualifying," the label may simply reflect a unique feature of Pennsylvania's criminal nomenclature rather than reveal a powerful expression of severity. That the cross-jurisdictional analysis reveals that Pennsylvania stands with only with one other state in so labeling reinforces that observation.

---

[49] Government's Brief in Support, Appendix (ECF No. 21-1).

[50] *Id.*; DC ST § 22-3232.

Given these considerations, the fourth factor (whether cross-jurisdictional consensus exists regarding the seriousness of the challenger's crimes) supports a finding that Mr. Laudenslager's disqualifying conviction is a serious crime. The *Binderup* court did not define what consensus means. But canvassing the district court opinions that decided under *Binderup* what consensus requires leads me to conclude that when all jurisdictions unanimously criminalize the knowing receipt of stolen property worth $1,280, and nearly three-fourths of those jurisdictions impose punishments satisfying disarmament under § 922(g)(1) and § 921(a)(20)(B), there is consensus that Mr. Laudenslager committed a serious crime.[51]

Therefore, upon considering these factors I conclude that Mr. Laudenslager has not met his burden at step one of the *Binderup-Marzzarella* framework for two reasons. First, while *Binderup* does not explain how the factors should be weighed,[52]

---

[51] *See United States v. Irving*, 316 F.Supp.3d 879, 889 n.12 (E.D.Pa. 2018) ("Thirty-five states have criminalized [tampering with public documents with intent to defraud], and thus the cross-jurisdictional consideration weighs in favor of seriousness"). *cf. Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at 6 (M.D.Pa. Sept. 28, 2018), *appeal docketed*, 18-3595 (3d Cir. 2018) (finding no-cross jurisdictional consensus on DUI's seriousness when "[o]nly a handful of states classify a second DUI offense as a felony or impose a maximum penalty of more than one year imprisonment" and "[f]ewer still increase the maximum possible term of imprisonment above one year when the offender drives at a high rate of alcohol (BAC greater than .15 percent)"); *Clark v. Sessions*, 336 F.Supp.3d 535, 543 (W.D.Pa. 2018) (finding no-cross jurisdictional consensus on carrying a firearm without a license when it is punished by only 38 states and "more than half prescribe a maximum sentence that does not meet the threshold of a traditional felony (more than one year in prison) and others do not even require a specific credential to carry a concealed weapon") (citation omitted); *Gurten v. Sessions*, 295 F.Supp.3d 511, 528 (E.D.Pa. 2018) (same).

[52] *See Binderup v. Attorney General*, 835 F.3d 336, 341 (3d Cir. 2016) ("Judge Ambro leaves it to future cases to explain more fully how to weigh and balance these various factors.") (Fuentes, J. dissenting).

the Third Circuit insinuated that if a challenger fails to show that all four factors favor his claim, his ability to meet his burden at step one of the *Binderup-Marzzarella* framework becomes correspondingly difficult.[53] District courts interpreting *Binderup* have implicitly agreed by typically allowing only those challengers who favorably satisfy all four factors to survive step one.[54]

That the fourth factor weighs against Mr. Laudenslager may be particularly important because the right to possess a firearm derives from the Second

---

[53] *See Binderup*, 836 F.3d at 353 n.6 (explaining that individual convicted of state felony would face a burden "extraordinarily high—and perhaps even insurmountable"); *id.* at 352 (explaining that crime "in which violence (actual or attempted) is an element of the offense is disqualifying") (internal quotation marks and citations omitted); *id* (explaining that sentence was minor in part because they contained no jail time); *id.* at 353 (explaining that "[w]ere the Challengers unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one").

At least one district court has suggested that the first factor-whether a state classifies the predicate offense as a misdemeanor or felony—is more important than the fourth factor—whether a cross-jurisdictional consensus exists, *see Gurten v. Sessions*, 295 F.Supp.3d 511, 528 (E.D.Pa. 2018). But the Third Circuit has not made such a declaration.

[54] *See Binderup*, 836 F.3d at 353 (concluding that challengers met burden to show that misdemeanor conviction for corrupting minor and misdemeanor conviction for carrying handgun without license were non-serious when all four factors met); *United States v. Brooks*, 341 F.Supp.3d 566, 596 (W.D.Pa. 2018) (finding challenger met burden when all four factors met); *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at 6 (M.D.Pa. Sept. 28, 2018), *appeal docketed*, 18-3595 (3d Cir. 2018) (finding challenger met burden to show misdemeanor DUI was non-serious when all four factors met); *Clark v. Sessions*, 336 F.Supp.3d 535, 543 (W.D.Pa. 2018) (finding challenger met burden to show misdemeanor carrying firearm without a license was non-serious when all four factors met). *But see Miller v. Sessions*, 17-2627, 2019 WL 421074, at *6-7 (E.D.Pa. Feb. 4, 2019) (explaining that when government argued that other states punished challenger's predicate offense seriously and challenger rebutted that contention by disputing the similarity of other states' statutes, the court "declined compare the similarities and differences between [the challenger's] crime and the crimes in the Government's survey because even if this factor is given some weight in the Government's favor, it does not outweigh the other three factors that weigh in [the challenger] favor").

Amendment—a federal constitutional right. While § 922(g)(1) "reflects a congressional policy judgment that states should have a role in determining what kinds of misdemeanor offenses will trigger disarmament,"[55] I am wary of over valuing a state's statutory scheme when determining the scope of an individual's federal constitutional right such that the right at issue would be impaired or protected solely whether an individual commits a crime in Pennsylvania or elsewhere.[56]

The *Binderup* court in an apparent nod to the importance of this fourth factor explained that it would be "difficult" for a challenger to carry his burden at step one without being able to show that "so many states" consider his crimes to be non-serious.[57] Mr. Laudenslager's papers do not address, let alone rebut, the Government's position that cross-jurisdictional consensus reveals the severity of his predicate offense.[58] That he is unable "to show that so many states consider [his] crimes to be non-serious" makes it "difficult for [him] to carry [his] burden at step one."[59]

---

[55] *Binderup*, 836 F.3d at 406 (Fuentes, J. dissenting).

[56] *Accord Carlson v. Green*, 446 U.S. 14, 23-24 (1980) (interpreting *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and holding in part that a federal official's liability for infringing on an individual's constitutional right should not depend upon where violation occurred).

[57] *Binderup*, 836 F.3d at 353.

[58] *cf. United States v. Brooks*, 341 F.Supp.3d 566, 596 (W.D.Pa. 2018) (finding lack of consensus where challenger showed that there was no consensus about the seriousness of carrying a firearm without a license and explained that "a growing number of states…do not even require a specific credential to carry a concealed weapon").

[59] *Binderup*, 836 F.3d at 353.

Second, the *Binderup* court made clear that the burden at step one belongs to Mr. Laudenslager, and he has failed to meet his burden. The Third Circuit explained that "a challenger will satisfy the first step of [the *Binderup-Marzzarella*] framework only if he proves that the law or regulation at issue burdens conduct protected by the Second Amendment."[60] Mr. Laudenslager's papers do not provide me with any basis to conclude that he has met his burden at step one—even though this Court gave him two opportunities to do so. He has proffered neither evidence nor argument to prove that his conviction for receiving stolen property was not a serious crime.[61] If I were to conclude otherwise on this bare record, it would render the burden placed on challengers in this context illusory by contravening both the Supreme Court's mandate in *District of Columbia v. Heller*—that statutes like § 922(g)(1) are "longstanding prohibitions" that are "presumptively lawful"[62]—and the Third Circuit's subsequent elucidation in *Binderup*—that courts "will presume the judgment of the legislature is correct and treat any crime subject to § 922(g)(1) as disqualifying unless there is a strong reason to do otherwise."[63]

---

[60] *Id.* at 356.

[61] *Id.* at 351; *accord United States v. Brooks*, No. 17-250, 2018 WL 2388817, at *8 (W.D.Pa. May 24, 2018) ("With respect to the court's second task at step one, [the challenger's] showing that his underlying predicate offense was not a serious crime must be 'strong.'").

[62] *District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.26 (2008).

[63] *Binderup*, 836 F.3d at 351, 356. *See also Holloway v. Sessions*, 275 F.Supp.3d 505, 514 (M.D.Pa. 2017) ("The challenger maintains the ultimate burden of proving that his crime of conviction is not 'serious.'").

Although the *Binderup* court stated that "there are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights," I will explain for Mr. Laudenslager's benefit why his tangential arguments are meritless. First, he suggests that the value of the television sets stolen amounted to only $650 (not $1,280 as proffered by the Government), and that this disparity creates a genuine issue of material fact precluding summary judgment as to the seriousness of Mr. Laudenslager's offense.[64] But Mr. Laudenslager does not support this bare assertion with any evidence.[65] In fact, record evidence contravenes Mr. Laudenslager's assertion. The criminal complaint and accompanying order adjudicating him guilty show that he was convicted of receiving stolen property valued at $1,280: the unspecified number of television sets in count I were valued at $630, the television set in count II was valued at $325, and the television set in count IV was valued at $325.[66] And in addition to not supporting with evidence his assertion that the television sets were valued at $630 so that a reasonable fact finder

---

[64] Show Cause Brief (ECF No.34) at 4; Brief in Opposition (ECF No. 28) at 14.

[65] *See, e.g., In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996) (explaining that when "responding to a motion for summary judgment, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

[66] Criminal Complaint (ECF No. 16-2) at 2.

could find in his favor, he does not explain why the difference in value is material to his case.[67]

Second, to the extent Mr. Laudenslager argues that his Second Amendment rights should be restored because his predicate conviction occurred long ago, or that he has been rehabilitated from his criminal past and will not recidivate,[68] *Binderup* makes clear that a court must not consider the passage of time, whether an individual has been rehabilitated, or the likelihood of recidivism in determining whether a challenger has met his burden at step one.[69] Again, *Binderup* states that "only the seriousness of the purportedly disqualifying offense determines the constitutional sweep of statutes like § 922(g)(1) at step one."[70]

In sum, Mr. Laudenslager has not met his burden to show that his predicate offense was not serious, and accordingly, his as-applied challenge fails at step one

---

[67] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[68] Mr. Laudenslager's complaint avers that he is "responsible, law-abiding American citizen" who has "no history of violent behavior" and is "unlikely to act in a manner dangerous to public safety." *See* Complaint (ECF No. 1) at ¶ 29. He maintains that his "possession of firearms would not be contrary to the public interes. [sic]" *Id.* He further alleges that his "unique personal circumstances" including the "passage of time since that conviction, [his] generally law-abiding record over the years, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose*." Id.* at ¶ 30.

[69] *Binderup*, 836 F.3d at 349-50. *See also, e.g., Tripodi v. Sessions*, 339 F.Supp.3d 458, 464 (E.D.Pa. 2018) (rejecting challenger's argument that he has been rehabilitated since his committing felony conspiracy as irrelevant under *Binderup*).

[70] *Binderup*, 836 F.3d at 350.

of the *Binderup-Marzzarella* framework.  Summary judgment on Count II will be granted in favor of the Government.[71]

## III. CONCLUSION

For the reasons discussed above, the Government's Motion for Summary Judgment will be granted.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[71] Even if Mr. Laudenslager had met his burden at step one, he does not rebut the Government's arguments that § 922 (g)(1) nevertheless survives intermediate scrutiny.  He simply makes no mention of the means-end analysis that *Binderup* and *Marzzarella* require, and thus, any arguments that Mr. Laudenslager could have made to show that the Government could not satisfy intermediate scrutiny are either waived, if the omission was intentional, or forfeited, if the omission was inadvertent.  *See Barna v. Board of School Directors of Panther Valley School District*, 877 F.3d 136, 147-48 (3d Cir. 2017) (explaining differences between forfeiture and waiver); *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 262 (3d Cir.2009) ("fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal, so 'the crucial question regarding waiver is whether defendants presented the argument with sufficient specificity to alert the district court.'") (citation omitted); *accord Barna*, 877 F.3d at 147 ("Because of the important interests underlying the preservation doctrine, we will not reach a forfeited issue in civil cases absent truly exceptional circumstances.") (internal quotation marks and citation omitted).